## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TIMOTHY P. RODGERS,**

        **Plaintiff,**

**v.**

**DENNIS MCDONDOUGH,
DEPARTMENT OF VETERANS
AFFAIRS, JOSHUA JACOBS,
MICHAEL J. MISSAL, RICHARD
HIPOLIT, KIM GRAVES, AND
RAYMOND P. VASIL,**

        **Defendants.**

**Case No. 24-CV-00686-SPM**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Before the Court is a Motion to Stay (Doc. 26) filed by Defendants Dennis McDonough, the Department of Veterans Affairs, Joshua Jacobs, Michael J. Missal, Richard Hipolit, Kim Graves, and Raymond P. Vasil (the "VA Defendants").[1] The instant case is an action for declaratory judgment and for injunctive relief filed by *pro se* Plaintiff Timothy P. Rodgers, who has also filed a Motion for Preliminary Injunction. (*See* Docs. 3, 17). Rodgers, a veteran of the United States Army, brings various constitutional claims in a fourteen-count Amended Complaint arguing that the Department of Veterans Affairs' adjudication process for veterans' disability claims is unconstitutional. (*See* Docs. 3, 4, 17). He seeks injunctive relief to prevent

---

[1] The VA Defendants note that, as of June 21, 2024, service had only been executed against Defendants McDonough and Hipolit and against the U.S. Attorneys' Office. (*See* Docs. 18–20, 26; *see also* Doc. 24, p. 1). Although there is a question about whether service has been properly executed, the VA Defendants state that the instant motion is brought by all Defendants out of an "abundance of caution." (*See* Doc. 26, p. 1 n.1).

the Department of Veterans Affairs ("VA") from continuing with its process of reducing his disability compensation, forfeiting his Special Monthly Compensation for his traumatic brain injury, and recouping benefits that the VA alleges were overpaid to him. (*See* Doc. 17, ¶ 47). For the following reasons set forth, the Motion to Stay Proceedings is **GRANTED**.

### RELEVANT FACTS AND PROCEDURAL HISTORY

The following facts are taken from Rodgers' filings and the Court accepts them as true for purposes of review. (*See* Docs. 3, 4, 9, 17). Rodgers was medically retired from the United States Army in 2014 due to injuries incurred during his active-duty military service. (*See* Doc. 17, ¶¶ 1–2, 22–27). After delays in the adjudication of his claim for VA disability benefits,[2] he was granted disability benefits after review of his case by a Veterans Law Judge. (*See id.*, ¶¶ 28–32). Rodgers claims that the VA Office of the Inspector General ("VA OIG") began an investigation of him after receiving an anonymous tip. (*See id.*, ¶ 35). Rodgers claims that the assigned VA OIG agent committed fraud during his investigation into him. (*See id.*, ¶¶ 33–46). Rodgers also claims that his ex-wife committed fraud via use of his disability benefits while Rodgers was incarcerated.[3] (*See* Doc. 9, ¶¶ 55–128). He claims that his ex-wife and her father were the witnesses who reported alleged misuse of Rodgers' VA disability

---

[2] Rodgers states that the "adjudication and appeal" period was 2,055 days (approximately 5.6 years). (Doc. 1, ¶¶ 29, 32).

[3] Rodgers notes that he was arrested on December 20, 2021 and states that he remained in jail for several months. (*See* Doc. 9, ¶ 50, 51). Rodgers was charged in Madison County with home invasion, armed violence (category II), aggravated battery of a victim 60+ years in age, aggravated battery using a deadly weapon, and aggravated unlawful restraint. *See People v. Rodgers*, No. 2021CF003846 (Ill. Cir. Ct.). His criminal trial began on March 18, 2021. It should also be noted that Rodgers has filed a lawsuit pending in this District against the Village of Glen Carbon and the law enforcement officers who arrested him on December 20, 2021. *See Rodgers v. Village of Glen Carbon*, No. 23-cv-03977-SMY (S.D. Ill.).

benefits, initiating the VA OIG investigation. (*See id.*, ¶ 91).

Critically, the VA OIG investigation resulted in the United States bringing criminal charges against Rodgers for misuse of VA disability benefits in a case also pending before this Court. *See United States v. Rodgers*, No. 23-cr-30121-SPM (S.D. Ill.). The Government alleges that Rodgers fraudulently obtained VA disability benefits by making false statements about the extent of his disabilities and that he concealed his receipt of retroactive benefits after his successful appeal in 2019. *See id.* (Doc. 1). Rodgers was indicted on October 17, 2023 with six counts of wire fraud in violation of 18 U.S.C. § 1343; concealing a material fact by trick, scheme, or device in violation of 18 U.S.C. § 1001(a)(1); making or using a false writing or document in violation of 18 U.S.C. § 1001(a)(3); concealment of bankruptcy assets in violation of 18 U.S.C. § 151(1); and making a false bankruptcy declaration in violation of 18 U.S.C. § 152(3). *See id.* (Doc. 1). Rodgers entered a not guilty plea on November 9, 2023. *See id.* (Doc. 8). The case is set for trial on October 7, 2024. *See id.* (Doc. 46).

Rodgers brings the instant suit seeking to enjoin the VA from severing his Special Monthly Compensation benefits until this Court has an opportunity to review his case on the merits. (*See* Docs. 3, 4, 9, 17). In his Motion for Preliminary Injunction, he argues that he is likely to succeed on the merits of his challenge on the following grounds: (1) the VA's Decision Review Officers ("DRO") unconstitutionally exercise final decision-making authority; (2) DROs are improperly supervised inferior officers; (3) the VA's adjudication process denied Rodgers his Fourth, Fifth, Sixth, and Seventh Amendment rights; (4) the VA's adjudication process violates Article III of the United States Constitution; (5) VA Officers misapplied federal law, caselaw, and

regulations in denying Rodgers' request for relief pursuant to 5 U.S.C. § 705; (6) the VA Officers willfully made material misrepresentations of fact and willfully excluded evidence; (7) the VA Officers violated 38 C.F.R. § 20.110; 28 U.S.C. § 7104, and 38 U.S.C. § 5104A; (8) the Secretary of Veterans Affairs violated the Administrative Procedure Act ("APA"); (9) the VA's rulemaking and enforcement violate Supreme Court caselaw and separation of powers; (10) VA OIG Agent Raymond Vasil willfully and intentionally violated the Privacy Act and the Council of the Inspectors General on Integrity and Efficiency Quality Standards for Investigation; and (11) the Secretary of Veterans Affairs abused his discretion and violated Rodgers' due process rights. (*See* Doc. 4; *see also* Docs. 9, 17). Rodgers states that he has brought his constitutional objections to the Secretary of Veterans Affairs multiple times since September 2022 without a response. (*See* Doc. 17, ¶ 57).

The VA Defendants filed the instant Motion to Stay Proceedings on June 6, 2024 arguing that Rodgers' civil case should be stayed because of the shared factual predicate between Rodgers's criminal case and this civil suit, which was filed six months *after* Rodgers was indicted. (*See* Doc. 26). The Defendants argue that the civil proceedings should be stayed because of the doctrine of *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37, 40–41, 43 (1971); because of this Court's inherent power to stay proceedings in the interests of justice, *see Doe v. City of Chicago*, 360 F. Supp. 2d 880 (N.D. Ill. 2005); or, alternatively, because of the pending United States Supreme Court decision in *SEC v. Jarkesy*, 34 F.4th 446 (2022), *cert. granted*, 143 S. Ct. 2688 (June 30, 2023) (Mem.), which is expected to be issued by the end of the current term. (*See* Doc. 26). Rodgers filed a Response (Doc. 27) in which he argues

that *Younger* abstention, the factors utilized in *Doe v. City of Chicago*, and the pendency of the Supreme Court decisions referenced by the VA Defendants all indicate that his civil case should not be stayed. The VA Defendants filed a Reply (Doc. 28).

## APPLICABLE LEGAL STANDARDS

District courts have the power to control their own dockets, including the discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 70 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019) ("[A] district court has inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues.").

In the specific situation where a civil suit and criminal case concern the same factual predicate, "[i]t is clear that 'nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment,' and 'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (first quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007); then quoting *S.E.C. v. Novaferon Labs, Inc.*, No. 91–3102, 941 F.2d 1210, 1991 WL 158757, at *2 (6th Cir. Aug. 14, 1991)). However,

> [T]he strongest argument for granting a stay is where a party is under criminal indictment because proceeding in related civil and criminal proceedings could (1) undermine a party's Fifth Amendment privilege against self-incrimination; (2) expose the basis of a party's criminal defense in advance of trial; or (3) otherwise prejudice the criminal or civil case.

*Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) (citing *In re Par Pharm., Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990)).

To determine whether a stay should be imposed in a civil trial that is related to an ongoing criminal matter, the court considers six distinct factors:

> (1) [W]hether the two actions involved the same subject matter, (2) whether the two actions are brought by the government, (3) the posture of the criminal proceeding, (4) the public interests at stake, (5) the plaintiff's interests and possible prejudice to the plaintiff, and (6) the burden that any particular aspect of the proceedings may impose on the defendants.

*Doe v. City of Chicago*, 360 F. Supp. 2d at 881 (citing *Nowaczyk v. Matingas*, 146 F.R.D. 169 (N.D. Ill. 1993); *Cruz v. County of DuPage*, 1997 WL 370194 (N.D. Ill. June 27, 1997)).

## ANALYSIS

In the instant motion, the VA Defendants first argue that *Younger* abstention applies here. (*See* Doc. 26, p. 4 (quoting *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007)) (citing *Younger v. Harris*, 401 U.S. 37, 40–41, 43 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–04 (1975)). While *Younger* abstention is typically invoked to avoid federalism concerns associated with a federal civil rights tort claim brought in parallel with a state criminal prosecution, the Defendants argue that it applies to the instant situation, as well. (*See id.*, p. 5, n.2 (citing *Deaver v. Seymour*, 822 F.2d 66, 69–70 (D.C. Cir. 1987) ("[I]n no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment."); *Ceglia v. Zuckerberg*, 600 F. App'x 34, 37 (2d Cir. 2015); *Iotova v. Rivera*, Case No. 22-cv-3786, 2022 WL 2971920, at *3 (S.D.N.Y. July 26, 2022))). They argue that

"extraordinary circumstances" are not present sufficient to disregard *Younger* abstention, especially since Rodgers' civil case involves concerns over constitutional issues that will likely be litigated in his criminal case. (*See id.*, p. 5 (quoting *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013))).

The VA Defendants also argue that the interests of justice require a stay be implemented. (*See id.*, p. 6). They reference the six factors elucidated in *Doe v. City of Chicago* in arguing that: (1) the civil and criminal cases concern identical factual material (e.g., whether or not Rodgers fraudulently obtained VA Special Monthly Compensation); (2) while the Government did not bring both actions, a stay avoids the potential for circumvention of Rodgers' Fifth Amendment right against self-incrimination; (3) the trial date for the criminal case is only four months away; (4) "the public interest, if any, raised by Plaintiff in these proceedings is not outweighed by the significant public interest of adjudication and finality of a criminal prosecution"; (5) the prejudice to Rodgers "is negligible"; and (6) "should the Court not stay these proceedings, the United States will be significantly burdened with having to simultaneously prosecute and defend cases involving Plaintiff." (Doc. 26, pp. 6–8).

In the alternative, the VA Defendants argue that "[t]he Supreme Court's forthcoming opinion in *Jarkesy* may . . . be instructive on several issues before this Court," including the Seventh Amendment's impact on administrative enforcement proceedings, whether bypassing District Court review of agency adjudication violates the nondelegation doctrine, and "[w]hether Congress violated Article II by granting for-cause removal protection to administrative law judges in agencies whose heads

enjoy for-cause removal protection." (*Id.*, pp. 8–9 (citing *Jarkesy*)).

In opposition, Rodgers adopts similarly inflammatory language as that used in his other filings. (*See* Doc. 27; *see also* Docs. 1, 3, 4, 9, 17). He argues that his criminal indictment was "rushed" by the Government and that the assigned AUSA "committed fraud upon the Court in that she proffered numerous false and misleading statements" to Magistrate Judge Beatty. (Doc. 27, p. 6).

Regarding *Younger* abstention, Rodgers argues that he has not challenged his indictment, that "Defendants urge the Court to shape new matters of policy" in requesting this Court abstain from ruling on Rodgers's civil case until after his criminal case is adjudicated, and that *Younger* abstention is "not incompliance [sic] with Local Rule 7.1(a)(2)." (*Id.*, p. 8). Rodgers also argues that the six factors from *Doe v. City of Chicago* indicate that a stay should not be granted. (Doc. 27, p. 9 (citing the same)). Namely, he argues that: (1) "the case has no implications on the USAO's criminal forfeiture allegations"; (2) "[t]he two actions are not brought by the government"; (3) "[t]he posture of the criminal proceeding has no bearing on the instant matter" because "[t]he Government chose a premature indictment fully knowing the administrative process inside VA was still ongoing"; (4) "[t]he instant matter protects the public's interest [sic] rights to administrative and civil due process"; (5) Rodgers's "constitutionally protected property interest as well as his interest in liberty, due process, and privacy will be protected by a decision in the instant matter"; and (6) "the rights of the government do not outweigh the Plaintiff's right of access to the courts" and "there is little prejudice to the defendants [because] the federal government has virtually limitless resources and assets." (*Id.*). Rodgers

argues that "a decision on the instant matter must occur prior to the conclusion of the ongoing, non-final administrative proceedings, and before the conclusion of USA v. Rodgers" because of Rodgers's "'here-and-now' irreparable injury." (*Id.*, p. 10). Rodgers cites to a case from the Eastern District of Pennsylvania to argue that his VA benefits should continue during his criminal case. (*Id.*, p. 11 (citing *United States v. Milbourne*, No. 22-cr-00282-PD-1 (E.D. Pa.))). Rodgers also argues that the VA Defendants' Motion to Stay should be denied because of separation of powers and because the VA Defendants' argument that litigation should be stayed pending the outcome of Supreme Court is a "frivolous" argument. (*Id.*, p. 12).

In their Reply (Doc. 28), the VA Defendants argue that, in essence, Rodgers has pleaded himself out of Court by arguing that the VA's administrative proceedings are non-final and still ongoing and because Rodgers has argued that the "allegedly 'unlawful administrative action' first commenced in September 2022," thus belying his argument that a preliminary injunction is necessary because of the "urgency" of a matter that has now been ongoing for nearly two years. (Doc. 28, p. 2 (citing Doc. 27, pp. 1–2); *see also* Docs. 1, 3, 9, 17). The VA Defendants also argue that any arguments involving Rodgers' criminal prosecution should be confined to that case only. (*See id.*). The VA Defendants refute Rodgers's analysis of each of the six factors from *Doe v. Chicago*—they argue that: (1) both the civil and criminal cases have "overlapping factual allegations . . . , which is crystallized by the Response's repeated reference to the criminal proceedings"; (2) Rodgers does not address the potential Fifth Amendment concerns raised by the VA Defendants; (3) Rodgers does not offer any substantive argument regarding the posture of the criminal case; (4) "even

assuming an adequate public interest existed, there is nothing to suggest any attendant urgency or time-sensitivity"; (5) "Plaintiff's reference to 'liberty, due process, and privacy' is overbroad, vague, without precedential support, and could theoretically be claimed by any plaintiff who wished to prosecute a civil claim relating to an earlier indictment brought against him"; and (6) "no one is denying access to the courts as claimed by Plaintiff[—] [q]uite the contrary as Plaintiff is an active party in three cases currently pending in this district court." (*Id.*, pp. 3–4).

They also argue that the "Response cites a number of inapposite opinions that dealt with issues not present in this case or before this Court," that *United States v. Milbourne* is not precedential, and that "Defendants are not asking the Court to 'legislate from the bench or perhaps exercise executive decisions, stripping the legislature and the President of their constitutional place and duty.' Rather, Defendants simply request the Court exercise the authority under *Younger* or via its inherent power to stay these proceedings until final judgment (and appeal, if any) in *USA v. Rodgers*." (*Id.*, p. 5 (quoting Doc. 27, p. 11)).

Considering the arguments raised by the parties, the Court holds that a stay is appropriate based on this Court's inherent power to stay cases, especially because of Fifth Amendment concerns. *See Doe v. City of Chicago*, 360 F. Supp. 2d at 881*; see also Smith v. Turner*, Case Nos. 22-cv-2109-JPG, 22-cv-2295-JPG, 23-cv-1538-JPG, 2023 WL 4030080, at *2 (S.D. Ill. June 15, 2023).

Regarding the first factor, even though Rodgers's civil case challenges the structure and process by which the VA conducts OIG investigations and adjudicates disability claims, there are clearly essential facts common to both cases, pointing

toward the necessity of a stay. Moreover, Rodgers's Response to the instant Motion shows the factual overlap between these cases. This factor points toward imposition of a stay.

On the second factor, while the Government did not file the instant case, it is a party to both, which creates a significant concern because of the constitutional concerns involved with the protection of Rodgers's Fifth Amendment rights. The VA Defendants note that Rodgers could (and may) refuse to respond to discovery requests in the civil case or be unable to respond to arguments made by the VA Defendants because of potential Fifth Amendment concerns as related to the criminal case. *See Doe v. City of Chicago* at 881 ("Because of the criminal charges against Sergeant Herman, his Fifth Amendment privilege is potentially threatened by defending this civil suit on the same subject matter as the criminal proceeding." (citing *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980))). This factor also points toward imposing a stay.

Regarding the third factor, the criminal case is scheduled for trial in approximately four months' time. Additionally, as Rodgers has argued that the VA's administrative investigation and appeals process has been ongoing for almost two years, a four-month delay in this case will not harm Rodgers's interests, especially as discovery has not yet begun. *See Doe v. City of Chicago* at 882 ("Plaintiff could also be harmed by a stay of the civil proceedings, which would further lengthen the time in which the Plaintiff must address the traumatic events alleged, prevent discovery from proceeding, and prevent Plaintiff from discovering other facts relevant to her claims. On the other hand, Sergeant Herman's request for stay is brought early in

the litigation with little actual discovery having taken place."). This factor points toward imposition of a stay.

Fourth, the Court agrees with the VA Defendants that "[t]o allow this case to proceed would permit a criminal defendant to make an 'end run' around his prosecution by pleading constitutional challenges in a subsequent civil action (including but not limited to one seeking preliminary injunction)." (Doc. 26, p. 7). Rodgers's "public interest" arguments are not cogent here. This factor, thus, also points toward a stay.

Fifth, Rodgers's argument about "liberty, due process, and privacy" (Doc. 27, p. 9) does not address the VA Defendants' argument that "[t]here is nothing to indicate Plaintiff will not have sufficient opportunity to prepare his defense to the criminal charges or to raise his arguments concerning constitutionality and forfeiture before the criminal court." (Doc. 26, p. 7; *see* Doc. 28, p. 4). This factor points toward a stay, as well.

Sixth, as discussed *supra*, the Court has significant concerns about the impact of Rodgers's Fifth Amendment rights on this case, regardless of what Rodgers argues. He cannot have it both ways—he cannot both seek injunctive relief as related to the same factual material as is contained within his indictment yet also refuse to respond to civil discovery because of his Fifth Amendment rights, thus prejudicing the VA Defendants' defense in this case. Rodgers's arguments about "access to the courts" are not relevant here. A stay will substantially reduce the inherent complexity in this case. This factor, therefore, points toward a stay, as well.

Moreover, the Court notes that Rodgers admits that the VA administrative adjudication process is still ongoing and that the Court of Appeals for Veterans Claims has "exclusive jurisdiction to review final decisions of the Secretary from the Board of Veterans Appeals." (Doc. 27, p. 4). He can certainly raise his VA structural and process arguments in that setting, as well. On this point, the Court notes that in the Eastern District of Pennsylvania case referenced by Rodgers, the defendant's VA benefits were, indeed, severed pending resolution of an appeal with the Court of Appeals of Veterans Claims. *See United States v. Milbourne*, No. 22-cr-00282-PD-1 (E.D. Pa.) (Docs. 35, 58). In fact, Defendant Milbourne is asking for the exact *opposite* of what Rodgers is requesting—namely, that his criminal trial be *delayed* pending resolution of his appeal before the Court of Appeals of Veterans Claims. (*See* Doc. 58).

Because a stay is warranted based on the Court's inherent power alone, the Court declines to address whether or not *Younger* abstention is warranted in accordance with the principles of federalism in the instant case. Finally, any forthcoming Supreme Court opinions from the 2023 Term that may apply to this case will be released before the stay on this case in lifted.

## CONCLUSION

For the reasons set forth above, the VA Defendants' Motion to Stay Proceedings (Doc. 26) is **GRANTED**. This case is **STAYED** pending resolution of the criminal case against Plaintiff Timothy Rodgers. The VA Defendants' response to Rodgers' Motion for Preliminary Injunction (Doc. 3) shall be filed no later than 30 days following the entry of final judgment in *United States v. Rodgers*, No. 23-cr-30121-SPM (S.D. Ill.).

**IT IS SO ORDERED.**

**DATED:   June 26, 2024**

<u>*s/ Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**